IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JENNIFER KAPPLER, | : | |
| Plaintiff, | : | Civil Action No. C-1-01-630 |
| vs. | : | |
| GIVAUDAN FLAVORS CO. | : | Judge Spiegel |
| Defendant. | : | |

## MOTION IN LIMINE OF DEFENDANT GIVAUDAN FLAVORS CO. TO EXCLUDE EVIDENCE REGARDING INAPPROPRIATE PICTURES FOUND ON PLAINTIFF'S WORK COMPUTER, TESTIMONY REGARDING PLAINTIFF'S REPORTING OF THE INAPPROPRIATE PICTURES, AND PORNOGRAPHIC E-MAIL SOLICITATIONS ALLEGEDLY SENT TO PLAINTIFF'S HOME COMPUTER.

Now comes Defendant Givaudan Flavors Co. ("Givaudan") and files its Motion in Limine to Exclude the following evidence: (1) inappropriate pictures found on Plaintiff's work computer after she decided to quit her job (Plaintiff's Exhibit 39), (2) testimony regarding her reporting of the inappropriate pictures to her supervisor and human resources, and (3) pornographic e-mail allegedly received by Plaintiff through her home e-mail account and discovered by Plaintiff four months after she had already terminated her employment with Givaudan (Plaintiff's Exhibit 60). As set forth in more detail in the attached Memorandum in Support, this evidence should be excluded because it is not relevant to Plaintiff's claims and is unfairly prejudicial to Defendant.

Respectfully submitted,

_____
Robin E. Harvey, Trial Attorney (0014183)
Jeffery L. VanWay (0069175)
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202
(513) 929-3400

Attorneys for Defendant
Givaudan Flavors Corp

## **MEMORANDUM IN SUPPORT**

**I.    INTRODUCTION**

In early September 1999, after months of planning her resignation, Plaintiff finally decided once and for all to quit her job at Givaudan.[1] (Pl. dep., pp. 365-66, 442-43). After making this final decision, Plaintiff began the process of physically preparing to leave. (Id.). Following her therapist's instructions to get her files in order "so that when you leave, people can find where you left off and you can feel good about leaving, that you are leaving in a good way," Plaintiff cleared materials off of the hard dive on her work computer. (Id. at 366). As she was clearing off her hard drive, she discovered some inappropriate picture files in a remote drive (the cache drive) on her computer. (Id. at 367). Plaintiff opened up four or five of the pictures and discovered that two were photos of topless women. (Id. at 377-79). Plaintiff denies putting these materials on her computer and alleges, without any factual support that this must have been the work of her former supervisor, Lou Poliner (who had already left the Company).

Plaintiff reported the discovery of these pictures to her new supervisor, Karin Tassos and to Human Resources Director Bill Harmon, but was not satisfied with their response. Plaintiff now intends to use the limited number of photos she actually looked at, as well as others that she did not look at, to support her constructive discharge claim. (See Plaintiff's Exhibit 39). As explained in more detail below, these photos are not relevant to Plaintiff's constructive discharge claim and therefore should be excluded.

Four months after Plaintiff had already quit her job, Plaintiff discovered that some pornographic e-mail solicitations had been sent to her home e-mail account. (Pl. dep., pp. 394-

---

[1] There was a short delay between the time Plaintiff made her final decision to leave and the date she submitted her letter of resignation. According to Plaintiff, this was because she was waiting to receive her final tuition reimbursement check from Givaudan and wanted to "have the issue of the payment closed before I left." (Pl. Affidavit, ¶36, Appendix A of Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment).

97). Plaintiff alleges that these e-mails were sent in August and September 1999, but admits that she did not discover them until January 2000. (Id.). These e-mails contained links to web sites that, by their very description, were obviously pornographic in nature. (Id.). Although Plaintiff knew that clicking on the links would take her to pornographic websites, she nevertheless clicked on the links and voluntarily exposed herself to the pornographic sites because she was "curious." (Id.). She now intends to introduce these e-mails in support of her claims in this case. (See Plaintiff's Exhibit 60). As explained in more detail below, because this evidence is not relevant to Plaintiff's claims and is speculative and unfairly prejudicial to Defendant, it should be excluded.

II.  **LAW AND ARGUMENT**

   A.  <u>Evidence And Testimony Regarding The Inappropriate Photos Found On Plaintiff's Work Computer After She Decided To Quit Her Job Is Not Relevant To Plaintiff's Claims</u>.

At pages 23 and 24 of her Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum), Plaintiff asserts that the photos, and the allegedly unsympathetic response of her supervisor and the human resources director, support her constructive discharge claim. Plaintiff's theory is flawed, as it is undisputed that Plaintiff did not discover these photos and did not discuss the photos with her supervisor and human resources until after she had already made her final decision to leave Givaudan. (Pl. dep., pp. 442-43).

In order to state a claim for constructive discharge, Plaintiff must show that at the time she decided to quit her working conditions were "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." <u>Kocsis v. Multi-Care Mgmt., Inc.</u>, 97 F.3d 876, 887 (6th Cir. 1996). The critical focus is on the working conditions **<u>at the time the employee decides to quit</u>**, and **not** **<u>on conditions that arise after this decision</u>**

4

already has been made.

The Tenth Circuit Court of Appeals addressed a similar issue in Ulibarri v. Lopez, 1996 U.S. App. LEXIS 27185 (10th Cir. Oct. 17, 1996) (attached as Exhibit A). In support of his constructive discharge claim, the plaintiff in Ulibarri pointed to his employer's allegedly retaliatory denial of certain of his mileage expenses. The court, however, held that this evidence did not support the plaintiff's constructive discharge claim, stating: "that denial could not have been retaliatory conduct that caused plaintiff's resignation because plaintiff submitted his letter of resignation . . . four days before defendant mailed the letter refusing mileage expenses." Id. at *6.

Here, as in Ulibarri, Plaintiff did not discover the evidence at issue until after she had already decided to quit. Likewise, her conversations with Karin Tassos and Bill Harmon did not take place until after her decision to quit had already been made. Therefore, because this evidence did not influence her decision to quit, it is of no relevance to her constructive discharge claim and will only serve to confuse and/or mislead the jury as to the relevant evidence and legal standards to be applied in this case.

Moreover, in the event that the Court allows Plaintiff to admit these photos, it should limit such evidence only to the four or five photos that she specifically recalls opening, and not the other photos that Plaintiff has marked as exhibits. Plaintiff testified specifically that she only opened four or five photos, and that two of these photos were of a topless woman. (Pl. dep., pp. 366-67, 377-78). Because Plaintiff did not view any of the other photos, they could not have influenced her resignation, and therefore are not relevant and should be excluded.

B.  The Pornographic E-Mail Solicitations Plaintiff Discovered After She Left Givaudan Are Not Relevant, Are Speculative, And Are Unfairly Prejudicial To Defendant.

The pornographic e-mails that Plaintiff alleges she received on her home computer should also be excluded for several reasons. First, as with the evidence surrounding the inappropriate pictures discovered on her work computer, it is undisputed that this material did not influence Plaintiff's decision to quit her job at Givaudan. Plaintiff admits that she did not discover this e-mail until four months **after** she had already left Givaudan. (Pl. dep., pp. 394-97). Thus, it is impossible for the receipt of the e-mail to have impacted her earlier decision to quit her job.

Second, Plaintiff has absolutely no evidence which supports her wild speculation that this e-mail was sent to her by a Givaudan employee. The e-mail does not identify itself as being sent from Givaudan or by a Givaudan employee. In fact, Plaintiff herself tried to track down the source and knows that it came from an IP address owned by her own internet provider, One-Net. (Id. at 399). It is quite possible that this e-mail could have been sent by someone using her internet service provider, it could have been unsolicited, or it could have been triggered by sites Plaintiff or others visited while using her computer to access the internet.

As anyone with an active e-mail account is all too aware of, millions of unsolicited e-mails (commonly known as "spam") are sent and received everyday. Much of this spam is more graphic than the junk mail that is delivered through the regular mail and a large portion of it is sexually specific and graphic. Indeed, the problem is so great, that the United States Senate recently introduced the Stop Pornography and Abusive Marketing Act ("SPAM Act") that would establish a national No-spam registry that would protect computer users from unsolicited spam. The text of this bill acknowledges the fact that much spam is pornographic in nature, stating:

> UCE [unsolicited commercial electronic mail] often contains objectionable, fraudulent, and offensive content. The Federal Trade Commission reports that over 60 percent of all UCE contains false, misleading, or deceptive information. Nearly one-fourth contains sexually explicit imagery. Parents have little ability to prevent these images from reaching their child's electronic mail in-box.

SPAM Act, S.B. 1231, Sec. 2(2) (June 11, 2003) (attached as Exhibit B).

Third, Plaintiff did not unsubscribe to this e-mail listing even though she admits she could have. (Pl. dep., p. 397). By the time she opened the e-mail solicitations in January 2000, she knew she had not received anymore after September 1999, and did not bother to unsubscribe. (Id.).

Allowing Plaintiff to introduce evidence of this pornographic spam would serve only to inflame, prejudice, and mislead the jury because Plaintiff has absolutely no evidence that this e-mail is related to her employment at Givaudan. To allow her to engage in such wild speculation would be unfairly prejudicial to Givaudan. Therefore, because this evidence is speculative and not relevant to Plaintiff's claims, and because the danger of unfair prejudice outweighs the non-existent probative value of this material, this evidence should be excluded.

### III. CONCLUSION

For all of the above reasons, Givaudan respectfully requests that the Court grant its Motion in Limine and exclude from trial the following evidence: (1) inappropriate pictures found on her work computer after she decided to quit her job (Plaintiff's Exhibit 39), (2) testimony regarding her reporting of the inappropriate pictures to her supervisor and human resources, and (3) pornographic e-mail solicitations allegedly sent to Plaintiff's home e-mail account and discovered by Plaintiff four months after she had already terminated her employment with Givaudan (Plaintiff's Exhibit 60).

Respectfully submitted,

*[signature]*

Robin E. Harvey, Trial Attorney (0014183)
Jeffery L. VanWay (0069175)
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati, Ohio 45202
(513) 929-3400

Attorneys for Defendant
Givaudan Flavors Corp

## CERTIFICATE OF SERVICE

This shall certify that a true copy of the foregoing was served upon David Torchia, Tobias, Kraus & Torchia, Attorney for Plaintiff, 911 Mercantile Library Building, 414 Walnut, Cincinnati, Ohio 45202, by hand-delivery on this **4th** day of September, 2003.

*[signature]*

Jeff VanWay