O:\CUL\CUL03.344                                     S.L.C.

Kappler v. Givaudan Flavors
1:01-CV-630
Defendant's Motion In Limine
re Innapropriate Pictures, etc.

**Exhibit B**

108TH CONGRESS
1ST SESSION

# S. _____

---

## IN THE SENATE OF THE UNITED STATES

Mr. SCHUMER introduced the following bill; which was read twice and referred to the Committee on _____

---

# A BILL

To eliminate the burdens and costs associated with electronic mail spam by prohibiting the transmission of all unsolicited commercial electronic mail to persons who place their electronic mail addresses on a national No-Spam Registry, and to prevent fraud and deception in commercial electronic mail by imposing requirements on the content of all commercial electronic mail messages.

1    *Be it enacted by the Senate and House of Representa-*

2    *tives of the United States of America in Congress assembled,*

3    **SECTION 1. SHORT TITLE.**

4        This Act may be cited as the "Stop Pornography and

5    Abusive Marketing Act" or the "SPAM Act".

6    **SEC. 2. FINDINGS.**

7        Congress finds the following:

June 11, 2003

Case 1:01-cv-00630-SAS    Document 38-3    Filed 09/04/2003    Page 2 of 37
O:\CUL\CUL03.344                                                S.L.C.

2

1    (1) Electronic mail is an increasingly valuable
2    tool for personal and commercial communication.
3    Unsolicited commercial electronic mail (UCE), com-
4    monly known as spam, however, has become an im-
5    pediment to efficient electronic mail use and creates
6    problems for all types of users and organizations, in-
7    cluding Internet Service Providers, individual users,
8    and corporate organizations.

9    (2) UCE often contains objectionable, fraudu-
10   lent, and offensive content. The Federal Trade Com-
11   mission reports that over 60 percent of all UCE con-
12   tains false, misleading, or deceptive information.
13   Nearly one-fourth contains sexually explicit imagery.
14   Parents have little ability to prevent these images
15   from reaching their child's electronic mail in-box.

16   (3) Consumers increasingly ignore or delete le-
17   gitimate commercial messages as they face an ever
18   increasing amount of UCE. If the vitality and force
19   of the Internet and electronic mail are to be pre-
20   served as a tool for commercial communication,
21   UCE must be curbed.

22   (4) UCE is also a severe financial concern. Lost
23   productivity, increased spending on technology sys-
24   tems and personnel, and personal frustration are
25   some of the costs associated with UCE.

3

1     (5) Despite the increasing deployment of anti-

2     spam services and technology, the number and size

3     of spam messages are growing faster than ever. In

4     1999, the average electronic mail user received just

5     40 pieces of UCE per year. In 2003, the number is

6     expected to pass 2,500. Experts estimate as much as

7     70 percent of electronic mail traffic qualifies as

8     UCE.

9     (6) Existing anti-spam service solutions alone

10    are insufficient to stop the growth of spam. Despite

11    the fact that Internet Service Providers spend mil-

12    lions of dollars each year on research, filtering and

13    other anti-spam software, and larger servers to deal

14    with the ever expanding volume of UCE, current

15    technology alone cannot control the spam problem.

16    (7) Federal law does not specifically address

17    UCE and leaves Federal and State law enforcement

18    and consumers with inadequate redress for the prob-

19    lem.

20    **SEC. 3. PURPOSES.**

21    The purposes of this Act are to—

22    (1) preserve electronic mail as a vital tool in

23    interstate commerce by—

24    (A) reducing the costs associated with

25    UCE;

1        (B) reducing the amount of UCE; and

2        (C) eliminating false, misleading, and de-

3    ceptive content in all commercial electronic

4    mail; and

5        (2) give consumers control over their in-boxes.

6    **SEC. 4. DEFINITIONS.**

7        In this Act:

8        (1) AFFIRMATIVE CONSENT.—The term "af-

9    firmative consent", when used with respect to a

10    commercial electronic mail message, means—

11        (A) the message falls within the scope of

12    an express and unambiguous invitation or per-

13    mission granted by the recipient and not subse-

14    quently revoked;

15        (B) the recipient had clear and con-

16    spicuous notice, at the time such invitation or

17    permission was granted, of—

18            (i) the fact that the recipient was

19        granting the invitation or permission;

20            (ii) the scope of the invitation or per-

21        mission, including what types of commer-

22        cial electronic mail messages would be cov-

23        ered by the invitation or permission and

24        what senders, if any, other than the party

25        to whom the invitation or permission was

1    communicated would be covered by the in-

2    vitation or permission; and

3        (iii) a reasonable and effective mecha-

4    nism for revoking the invitation or permis-

5    sion; and

6        (C) the recipient has not, after granting

7    the invitation or permission, submitted a re-

8    quest under section 204 not to receive unsolic-

9    ited commercial electronic mail messages from

10   the sender of the message.

11    (2) COMMERCIAL ELECTRONIC MAIL MES-

12   SAGE.—The term "commercial electronic mail mes-

13   sage" means any electronic mail message the pri-

14   mary purpose of which is to advertise or promote,

15   for a commercial purpose, a commercial product or

16   service (including content on an Internet website).

17    (3) COMMISSION.—The term "Commission"

18   means the Federal Trade Commission.

19    (4) DOMAIN NAME.—The term "domain name"

20   means any alphanumeric designation which is reg-

21   istered with, or assigned by, any domain name reg-

22   istrar, domain name registry, or other domain name

23   registration authority as part of an electronic mail

24   address on the Internet.

25    (5) ELECTRONIC MAIL ADDRESS.—

6

1          (A) IN GENERAL.—The term "electronic

2     mail address" means a destination (commonly

3     expressed as a string of characters) to which

4     electronic mail can be sent or delivered.

5          (B) INCLUSION.—In the case of the Inter-

6     net, the term "electronic mail address" may in-

7     clude an electronic mail address consisting of a

8     user name or mailbox (commonly referred to as

9     the "local part") and a reference to an Internet

10    domain (commonly referred to as the "domain

11    part").

12        (6) ELECTRONIC MAIL SERVICE.—The term

13   "electronic mail service" means a service for the

14   transmission of electronic mail messages that re-

15   ceives the content of, and recipient list for, electronic

16   mail messages that it sends from the person or enti-

17   ty procuring such services. For purposes of this Act,

18   to be an electronic mail service, such service must

19   retain identifying information about the person or

20   entity procuring services and cooperate with law en-

21   forcement actions brought under this Act.

22        (7) FUNCTIONING RETURN ELECTRONIC MAIL

23   ADDRESS.—

24        (A) The term "functioning return elec-

25     tronic mail address" means a legitimately ob-

7

1     tained electronic mail address, clearly and con-

2     spicuously displayed in an electronic mail mes-

3     sage, that—

4          (i) remains capable of receiving mes-

5          sages for no less than 30 days after the

6          transmission of such commercial electronic

7          mail message; and

8          (ii) that has capacity reasonably cal-

9          culated, in light of the number of recipi-

10         ents of the electronic mail message, to en-

11         able it to receive the full expected quantity

12         of reply messages from such recipients.

13    (B) An electronic mail address that meets

14   the requirements of subparagraph (A) shall not

15   be excluded from this definition because of a

16   temporary inability to receive electronic mail

17   messages due to technical problems, provided

18   steps are taken to correct such technical prob-

19   lems within a reasonable time period.

20   (8) HEADER INFORMATION.—The term "header

21 information" means the source, destination, and

22 routing information, or information authenticating

23 the sender, associated with an electronic mail mes-

24 sage, including the originating domain name, origi-

25 nating electronic mail address, information regard-

1   ing any part of the route that an electronic mail

2   message travels or appears to travel on the Internet

3   or on an online service, or other authenticating in-

4   formation.

5     (9) IMPLIED CONSENT.—The term "implied

6   consent", when used with respect to a commercial

7   electronic mail message, means—

8       (A) within the 3-year period ending upon

9       receipt of such message, there has been a busi-

10       ness transaction between the sender and the re-

11       cipient (including a transaction involving the

12       provision, free of charge, of information, goods,

13       or services requested by the recipient); and

14       (B) the recipient was, at the time of such

15       transaction or thereafter, provided a clear and

16       conspicuous notice of an opportunity not to re-

17       ceive commercial electronic mail messages from

18       the sender and has not exercised such oppor-

19       tunity.

20     (10) INITIATE.—The term "initiate" means to

21   originate an electronic mail message or to procure

22   the origination of such message, regardless of wheth-

23   er the message reaches its intended recipients, and

24   does not include the actions of an Internet access

25   service or an electronic mail service used by another

1     person for the transmission of an electronic mail

2     message for which another person has provided and

3     selected the recipient electronic mail addresses. For

4     purposes of this Act, more than 1 person may be

5     considered to have initiated the same message.

6         (11) INTERNET.—The term "Internet" has the

7     meaning given that term in the Internet Tax Free-

8     dom Act (Public Law 105–277, div. C, title XI,

9     § 1101(e)(3)(c)).

10        (12) INTERNET ACCESS SERVICE.—The term

11    "Internet access service" has the meaning given that

12    term in section 231(e)(4) of the Communications

13    Act of 1934 (47 U.S.C. 231(e)(4)).

14       (13) PROTECTED COMPUTER.—The term "pro-

15    tected computer" has the meaning given that term

16    in section 1030(e)(2) of title 18, United States

17    Code.

18       (14) RECIPIENT.—The term "recipient", when

19    used with respect to a commercial electronic mail

20    message, means the addressee of such message. If

21    an addressee of a commercial electronic mail mes-

22    sage has 1 or more electronic mail addresses in addi-

23    tion to the address to which the message was ad-

24    dressed, the addressee shall be treated as a separate

25    recipient with respect to each such address.

10

1  (15) REGISTERED ELECTRONIC MAIL AD-

2 DRESS.—The term "registered electronic mail ad-

3 dress" means an electronic mail address which has

4 been placed on the No-Spam Registry administered

5 by the Federal Trade Commission by the owner of

6 the electronic mail address.

7  (16) ROUTINE CONVEYANCE.—The term "rou-

8 tine conveyance" means the transmission, routing,

9 relaying, handling, or storing, through an automatic

10 technical process, of an electronic mail message for

11 which another person has provided and selected the

12 recipient addresses.

13  (17) SENDER.—The term "sender", when used

14 with respect to a commercial electronic mail message

15 or an unsolicited commercial electronic mail mes-

16 sage, means a person who initiates such a message

17 and whose product, service, or Internet web site is

18 advertised or promoted by the message, but does not

19 include any person, including a provider of Internet

20 access service or electronic mail service, whose role

21 with respect to the message is limited to routine con-

22 veyance of the message.

23  (18) UNSOLICITED COMMERCIAL ELECTRONIC

24 MAIL MESSAGE; UCE.—

11

1          (A) IN GENERAL.—The terms "unsolicited

2    commercial    electronic    mail    message"    and

3    "UCE" mean any commercial electronic mail

4    message that is sent to a recipient—

5              (i) without prior affirmative consent

6          or implied consent from the recipient; or

7              (ii) to a recipient who, subsequent to

8          the establishment of affirmative or implied

9          consent under clause (i), has expressed, in

10         a reply submitted pursuant to section 204,

11         or in response to any other opportunity the

12         sender may have provided to the recipient,

13         a desire not to receive commercial elec-

14         tronic mail messages from the sender.

15         (B) EXCLUSION.—Notwithstanding sub-

16   paragraph (A), the term "unsolicited commer-

17   cial electronic mail message" does not include

18   an electronic mail message sent by or on behalf

19   of one or more lawful owners of copyright, pat-

20   ent, publicity, or trademark rights to an unau-

21   thorized user of protected material notifying

22   such user that the use is unauthorized and re-

23   questing that the use be terminated or that per-

24   mission for such use be obtained from the

25   rights holder or holders.

# TITLE I—PROTECTION FROM UN-SOLICITED ELECTRONIC MAIL

**SEC. 101. ESTABLISHMENT OF THE NATIONAL NO-SPAM REGISTRY.**

(a) IN GENERAL.—The Commission shall establish a registry (referred to in this section as the "Registry") in which any person that does not wish to receive unsolicited commercial electronic mail may register electronic mail addresses.

(b) REGISTRATION.—The Commission shall permit any person to register the electronic mail addresses of the person, or the electronic mail addresses over which the person has authority or control, including registration by electronic mail, on the Registry.

(c) REGISTRATION BY PARENT.—The Commission shall permit a parent, legal guardian, or other person with control or authority over electronic mail addresses to which minor children have access, to register such addresses.

(d) PROHIBITION ON UNSOLICITED COMMERCIAL ELECTRONIC MAIL TO REGISTERED ADDRESSES.—Except as otherwise authorized by the Commission in regulations prescribed under this section, it shall be unlawful

Case 1:01-cv-00630-SAS    Document 38-3    Filed 09/04/2003    Page 13 of 37
O:\CUL\CUL03.344                                                    S.L.C.

13

1    for a person to initiate UCE to a registered electronic mail

2    address.

3    **SEC. 102. ENFORCEMENT.**

4         (a) ENFORCEMENT POWERS.—

5              (1) IN GENERAL.—The Commission shall en-

6         force this section as part of its duties under the

7         Federal Trade Commission Act (15 U.S.C. 41 et

8         seq.).

9              (2) REPORTING OF VIOLATIONS.—For purposes

10        of the enforcement of section 101(d), the Commis-

11        sion shall establish procedures to permit the report-

12        ing of violations of this section to the Commission,

13        including appropriate links on the Internet web site

14        of the Commission and the use of a toll-free tele-

15        phone number (commonly referred to as an "800

16        number") for such purposes.

17        (b) CIVIL PENALTY.—

18             (1) IN GENERAL.—The Commission may im-

19        pose a civil penalty not to exceed $5,000 for each

20        violation of section 101(d). For purposes of this

21        paragraph, each day of violation shall constitute a

22        separate offense.

23             (2) UNAUTHORIZED USE OF REGISTRY.—The

24        Commission may impose a civil penalty not to exceed

25        $100,000 for each unauthorized use of the Registry.

14

1 **SEC. 103. REGULATIONS.**

2     (a) IN GENERAL.—Not later than 180 days after the

3 date of enactment of this Act, the Commission shall issue

4 regulations for establishing and maintaining the Registry,

5 providing secure distribution of the Registry to marketers

6 for the purpose of complying with this section, protecting

7 the Registry from unauthorized use, and enforcing the

8 provisions of this section.

9     (b) PROTECTION OF CHILDREN.—

10         (1) CREATION OF CATEGORIES.—The Commis-

11     sion may create specific categories of electronic mail

12     for which recipients who are minors can receive pro-

13     tection under this Act.

14         (2) TYPES OF CATEGORIES.—The categories

15     created under paragraph (1) may include—

16         (A) products or services that a minor child

17         is prohibited by law from purchasing; and

18         (B) electronic mail that contains or adver-

19         tises adult content or links to such content.

20         (3) COMPLIANCE.—Senders shall honor the cat-

21     egories created under paragraph (1) without regard

22     to actual or implied consent given by the minor.

23     (c) FEES.—The Commission shall include in its regu-

24 lations a method for assessing fees on marketers for use

25 of the Registry that are sufficient to establish, administer,

26 and maintain the Registry.

Case 1:01-cv-00630-SAS    Document 38-3    Filed 09/04/2003    Page 15 of 37
O:\CUL\CUL03.344                                                S.L.C.

15

1 **SEC. 104. SAFE HARBOR FOR REASONABLE PROCEDURES.**

2     No person shall be in violation of this Act if—

3         (1) the electronic mail address has been on the

4 Registry for less than 30 days; or

5         (2) the person reasonably relies on the Registry

6 provided by the Commission and takes reasonable

7 measures to comply with this Act.

# 8 TITLE II—REQUIREMENTS FOR
# 9 SENDERS OF UNSOLICITED
# 10 COMMERCIAL ELECTRONIC
# 11 MAIL AND COMMERCIAL
# 12 ELECTRONIC MAIL

13 **SEC. 201. LABELING REQUIREMENTS FOR UNSOLICITED**

14         **COMMERCIAL ELECTRONIC MAIL.**

15     (a) INCLUSION OF IDENTIFIER IN UNSOLICITED

16 COMMERCIAL ELECTRONIC MAIL.—Except as provided in

17 subsection (b), it shall be unlawful for any person to ini-

18 tiate the transmission of any UCE to a protected com-

19 puter unless the message provides clear and conspicuous

20 identification that the message is an advertisement or so-

21 licitation, by providing, as the first characters in the sub-

22 ject line, "ADV:".

23     (b) SAFE HARBOR.—Subsection (a) shall not apply

24 if—

25         (1) the sender is a member of a self-regulatory

26 organization approved by the Commission under

Case 1:01-cv-00630-SAS    Document 38-3    Filed 09/04/2003    Page 16 of 37
O:\CUL\CUL03.344                                                        S.L.C.

16

1    subsection (c) and has agreed in writing to meet the

2    requirements for participation established by that

3    organization; and

4        (2) the sender is deemed by the self-regulatory

5    organization to be in full compliance with the re-

6    quirements of that organization.

7    (c) APPROVAL BY THE COMMISSION.—The Commis-

8    sion may approve a self-regulatory organization under this

9    section if the Commission finds the following:

10        (1) PARTICIPATION REQUIREMENTS.—The self-

11    regulatory organization has implemented guidelines

12    and procedures that require program participants,

13    which may include a company or any of its divisions,

14    to—

15            (A) adhere to the requirements of this Act;

16            (B) provide information in each electronic

17        mail message sufficient to identify the company

18        on whose behalf the electronic mail is sent;

19            (C) provide notice, through a publicly

20        available policy, of—

21                (i) the ways in which electronic mail

22            addresses are collected by the participant;

23                (ii) how such addresses are used; and

24                (iii) to whom such addresses are dis-

25            closed;

Case 1:01-cv-00630-SAS    Document 38-3    Filed 09/04/2003    Page 17 of 37
O:\CUL\CUL03.344                                                    S.L.C.

17

1    (D) provide a conspicuous link in each

2    electronic mail message to the notice referred to

3    in subparagraph (C);

4    (E) provide recipients with a clear and

5    conspicuous opportunity to make choices re-

6    garding the use of their electronic mail address-

7    es, including the disclosure of such addresses to

8    third parties in each electronic mail message;

9    (F) enable consumers to correct or

10    modify—

11        (i) their electronic mail addresses col-

12        lected by the participant; or

13        (ii) any of the choices consumers have

14        made regarding the use and disclosure of

15        such addresses;

16    (G) take reasonable steps designed to pre-

17    vent the unauthorized disclosure or release of

18    electronic mail addresses;

19    (H) provide clear and conspicuous informa-

20    tion in each electronic mail message sufficient

21    to inform recipients how they can file a com-

22    plaint regarding the failure of a participant to

23    follow the requirements of the self-regulatory

24    organization of the stated practices of the par-

25    ticipant; and

18

1          (I) provide an agent for service of process

2     and consent to suit in the United States.

3     (2) ELIGIBILITY AND VERIFICATION.—The self-

4     regulatory organization has implemented procedures

5     and requirements to provide for—

6          (A) a written certification from a senior

7     corporate officer or other responsible executive

8     of the participant, prior to determining eligi-

9     bility to participate in the self-regulatory orga-

10    nization, that states—

11          (i) the participant has procedures and

12     practices in place that are designed to sat-

13     isfy, at a minimum, the guidelines, proce-

14     dures, requirements, and restrictions of the

15     self-regulatory organization; and

16          (ii) the participant has taken good

17     faith efforts to maintain compliance with

18     the guidelines, procedures, requirements,

19     and restrictions of the self-regulatory orga-

20     nization; and

21          (B) subsequent periodic review of the pol-

22     icy and practices of a participant to ensure the

23     compliance with the requirements of the organi-

24     zation.

19

1        (3) EVIDENCE OF PARTICIPATION.—The self-

2    regulatory organization has implemented provisions

3    to identify participation in the program, including a

4    seal that can be recognized by filtering technology.

5        (4) DISPUTE RESOLUTION PROCESS.—

6            (A)    SELF-REGULATORY    ORGANIZATION

7        PROCESS.—

8                (i) IN GENERAL.—The self-regulatory

9            organization has implemented a dispute

10           resolution process for recipients of UCE

11           from program participants.

12               (ii) PROCESS REQUIREMENTS.—The

13           dispute   resolution   process   implemented

14           under clause (i)—

15                   (I) must be available without

16               charge to a recipient;

17                   (II) must be available to the par-

18               ticipant at a reasonable cost;

19                   (III) must be completed not later

20               than 30 days after submission of a

21               dispute by the recipient and notifica-

22               tion to the participant, or not later

23               than 60 days after submission of the

24               dispute if the participant notifies the

25               recipient that additional time is re-

O:\CUL\CUL03.344                                                    S.L.C.

20

1       quired to obtain information to resolve

2       the dispute;

3                 (IV) must include procedures for

4       suspension and termination of those

5       participants who violate the guide-

6       lines, procedures, requirements, or re-

7       strictions of the organization; and

8                 (V) may include, as one option,

9       binding arbitration.

10      (B) INVOLUNTARY SUSPENSION OR TERMI-

11      NATION.—The self-regulatory organization has

12      established procedures and requirements that—

13                (i) enable a participant that is invol-

14      untarily suspended or terminated from

15      participation in the organization to take

16      timely remedial action to achieve compli-

17      ance before any suspension or termination

18      becomes final;

19                (ii) provide for mandatory, public re-

20      porting of any final decision to involun-

21      tarily suspend or terminate a participant;

22      and

23                (iii) provide for notice to the Commis-

24      sion of any final decision to involuntarily

25      terminate a participant.

Case 1:01-cv-00630-SAS    Document 38-3    Filed 09/04/2003    Page 21 of 37
O:\CUL\CUL03.344                                                      S.L.C.

21

1      (C) RESOLUTION BY THE COMMISSION.—

2          (i) IN GENERAL.—The Commission

3      shall promptly refer any dispute submitted

4      to the Commission to the participant in-

5      volved if the recipient at issue has not ini-

6      tially sought resolution under subpara-

7      graph (A).

8          (ii) REQUIREMENTS.—A recipient of

9      UCE may submit a dispute with a pro-

10     gram participant to the Commission for

11     resolution under this subparagraph if—

12          (I) the dispute was initially sub-

13          mitted for resolution through the dis-

14          pute resolution process of the partici-

15          pant under subparagraph (A) ;

16          (II) the dispute submitted under

17          subparagraph (A)—

18              (aa) was not resolved within

19              30 days after submission of the

20              dispute by the recipient; or

21              (bb) was not resolved to the

22              satisfaction of the recipient;

23          (III) notice of the dispute is sub-

24          mitted to the Commission not later

1      than 30 days after the recipient was

2      notified of the resolution;

3       (IV) the recipient has not volun-

4       tarily accepted a resolution of the dis-

5       pute under subparagraph (A); and

6       (V) the dispute was not resolved

7       through binding arbitration.

8    (5) INDEPENDENCE.—The self-regulatory orga-

9 nization has established requirements to help ensure

10 that program eligibility, compliance, and dispute res-

11 olution mechanisms and determinations are made

12 exclusively by persons who are independent of the

13 program participant.

14 (d) APPLICATION PROCESS.—

15    (1) IN GENERAL.—The Commission shall pro-

16 mulgate rules for the application process for the ap-

17 proval of a self-regulatory organization this section.

18    (2) PUBLIC NOTICE.—Upon receipt of an appli-

19 cation, the Commission shall provide notice of the

20 application and an opportunity for comment on the

21 application to the public.

22    (3) DECISION.—The Commission shall—

23     (A) make a decision on an application not

24     later than 180 days after the application is re-

25     ceived; and

23

1       (B) set forth, in writing, its conclusions

2       with regard to such requests.

3       (4) DURATION.—An application approved by

4       the Commission shall be approved for a period of 2

5       years.

6       (5) APPEAL.—Final action by the Commission

7       on a request for approval of guidelines, or the failure

8       to act within 180 days on a request for approval of

9       guidelines, may be appealed to a district court of the

10      United States or appropriate jurisdiction as provided

11      for in section 706 of title 5, United States Code.

12    (e) REVOCATION OF APPROVAL.—The Commission

13 may, after notice and an opportunity to be heard, revoke

14 approval if the Commission finds that the self-regulatory

15 organization fails to meet the requirements of this section.

16    (f) RELEASE OF CERTAIN INFORMATION.—The Com-

17 mission may compel a self-regulatory organization, or the

18 administrator of the self-regulatory organization, to pro-

19 vide proprietary information or personally identifiable in-

20 formation of consumers to the Commission.

21    (g) MISREPRESENTATION OF PARTICIPATION IN THE

22 SELF-REGULATORY ORGANIZATION.—It shall be unlawful

23 for an individual or entity to misrepresent that the indi-

24 vidual or entity is a participant in the self-regulatory orga-

24

1 nization, including through any evidence referred to in

2 subsection (c)(3).

**SEC. 202. COMPLIANCE WITH ISP POLICIES.**

4     It shall be unlawful for a person to initiate the trans-

5 mission of commercial electronic mail or UCE in violation

6 of Internet Service Provider policies with respect to elec-

7 tronic mail, account registration and use, or other terms

8 of service.

**SEC. 203. VALID INFORMATION.**

10     It shall be unlawful for a sender to initiate the trans-

11 mission of commercial electronic mail or UCE to a pro-

12 tected computer that contains false, misleading, or decep-

13 tive information in the subject line, header or router infor-

14 mation, or the body of the message, including the informa-

15 tion regarding unsubscribe option required by section 204.

**SEC. 204. UNSUBSCRIBE OPTION.**

17     (a) IN GENERAL.—All commercial electronic mail

18 and UCE shall contain the following:

19         (1) INCLUSION OF RETURN ADDRESS.—

20             (A) IN GENERAL.—A functioning return

21             electronic mail address or other Internet-based

22             mechanism, clearly and conspicuously displayed,

23             that—

24                 (i) a recipient may use to submit a

25                 reply electronic mail message requesting

25

1  not to receive any future UCE from that

2  sender at the electronic mail address where

3  the message was received; and

4   (ii) remains capable of receiving such

5  messages or communications for no less

6  than 30 days after the transmission of the

7  original message.

8  (B) TEMPORARY INABILITY TO RECEIVE

9  MESSAGES.—A return electronic mail address

10  or other mechanism does not fail to satisfy the

11  requirements of subparagraph (A) if it is unex-

12  pectedly and temporarily unable to receive mes-

13  sages due to technical or capacity problems, if

14  the problem with receiving messages is cor-

15  rected within a reasonable time period.

16  (2) NOTICE OF RIGHT TO DECLINE FURTHER

17  MESSAGES.—Clear and conspicuous notice, set out

18  in bold type and in a font no smaller than the small-

19  est font type used in the remainder of the message,

20  of the opportunity to decline to receive further com-

21  mercial electronic mail and UCE from the sender.

22  (b) VIOLATION.—It shall be unlawful for a sender to

23 initiate transmission of commercial electronic mail or

24 UCE to a recipient after that recipient has exercised the

25 unsubscribe option this section.

Case 1:01-cv-00630-SAS    Document 38-3    Filed 09/04/2003    Page 26 of 37
O:\CUL\CUL03.344                                                S.L.C.

26

1  **SEC. 205. PROHIBITION OF TRANSMISSION OF COMMER-**

2         **CIAL ELECTRONIC MAIL AND UNSOLICITED**

3         **COMMERCIAL ELECTRONIC MAIL TO AD-**

4         **DRESSES OBTAINED THROUGH ILLEGAL HAR-**

5         **VESTING OR AUTOMATED MEANS.**

6      (a) IN GENERAL.—It shall be unlawful for any per-

7  son to initiate the transmission, to a protected computer,

8  of a commercial electronic mail message or UCE, or to

9  assist in the origination of such a message by providing

10 or selecting addresses to which the message will be sent,

11 if such person knows that, or acts with reckless disregard

12 as to whether—

13       (1) the electronic mail address of the recipient

14       was obtained, using an automated means, from an

15       Internet website or proprietary online service oper-

16       ated by another person;

17       (2) the website or proprietary online service

18       from which the address was obtained included, at

19       the time the address was obtained, a notice stating

20       that the operator of such a website or proprietary

21       online service will not give, sell, or otherwise transfer

22       addresses maintained by such site or service to any

23       other party for the purpose of initiating, or enabling

24       others to initiate, UCE; or

Case 1:01-cv-00630-SAS    Document 38-3    Filed 09/04/2003    Page 27 of 37
O:\CUL\CUL03.344                                                      S.L.C.

27

1       (3) the electronic mail address of the recipient

2    was obtained using automated means based on a

3    combination of names, letters, or numbers.

4    (b) DISCLAIMER.—Nothing in this section creates an

5 ownership or proprietary interest in such electronic mail

6 addresses.

7 **SEC. 206. VALID POSTAL ADDRESS.**

8    It shall be unlawful for any person to initiate the

9 transmission of commercial electronic mail or UCE with-

10 out identifying the valid, physical address of the sender

11 in a clear and conspicuous manner.

12 # TITLE III—ENFORCEMENT

13 **SEC. 301. ENFORCEMENT BY FEDERAL TRADE COMMIS-**

14         **SION.**

15    Except as otherwise provided in section 102, the

16 Commission shall prevent any person from violating this

17 Act in the same manner, by the same means, and with

18 the same jurisdiction, powers, and duties as though all ap-

19 plicable terms and provisions of the Federal Trade Com-

20 mission Act (15 U.S.C. 41 et seq.) were incorporated into

21 and made a part of this Act. Except as provided in title

22 I, the Commission may seek penalties and fines according

23 to all applicable terms and provisions of the Federal Trade

24 Commission Act. Nothing in this Act shall be construed

Case 1:01-cv-00630-SAS    Document 38-3    Filed 09/04/2003    Page 28 of 37
O:\CUL\CUL03.344                                                S.L.C.

28

1    to limit the authority of the Commission under any other

2    provision of law.

**SEC. 302. ENFORCEMENT BY CERTAIN OTHER AGENCIES.**

4    (a) IN GENERAL.—Compliance with this Act shall be

5    enforced—

6        (1) under section 8 of the Federal Deposit In-

7        surance Act (12 U.S.C. 1818), in the case of—

8            (A) national banks, and Federal branches

9            and Federal agencies of foreign banks, and any

10           subsidiaries of such entities (except brokers,

11           dealers, persons providing insurance, invest-

12           ment companies, and investment advisers), by

13           the Office of the Comptroller of the Currency;

14           (B) member banks of the Federal Reserve

15           System (other than national banks), branches

16           and agencies of foreign banks (other than Fed-

17           eral branches, Federal agencies, and insured

18           State branches of foreign banks), commercial

19           lending companies owned or controlled by for-

20           eign banks, organizations operating under sec-

21           tion 25 or 25A of the Federal Reserve Act (12

22           U.S.C. 601 and 611), and bank holding compa-

23           nies and their nonbank subsidiaries or affiliates

24           (except brokers, dealers, persons providing in-

S.L.C.

29

1    surance, investment companies, and investment

2    advisers), by the Board;

3        (C) banks insured by the Federal Deposit

4    Insurance Corporation (other than members of

5    the Federal Reserve System) insured State

6    branches of foreign banks, and any subsidiaries

7    of such entities (except brokers, dealers, per-

8    sons providing insurance, investment compa-

9    nies, and investment advisers), by the Board of

10    Directors of the Federal Deposit Insurance Cor-

11    poration; and

12        (D) savings associations the deposits of

13    which are insured by the Federal Deposit In-

14    surance Corporation, and any subsidiaries of

15    such savings associations (except brokers, deal-

16    ers, persons providing insurance, investment

17    companies, and investment advisers), by the Di-

18    rector of the Office of Thrift Supervision;

19        (2) under the Federal Credit Union Act (12

20    U.S.C. 1751 et seq.) by the Board of the National

21    Credit Union Administration with respect to any

22    Federally insured credit union, and any subsidiaries

23    of such a credit union;

24        (3) under the Securities Exchange Act of 1934

25    (15 U.S.C. 78a et seq.) by the Securities and Ex-

O:\CUL\CUL03.344                                              S.L.C.

30

1    change Commission with respect to any broker or

2    dealer;

3         (4) under the Investment Company Act of 1940

4    (15 U.S.C. 80a–1 et seq.) by the Securities and Ex-

5    change Commission with respect to investment com-

6    panies;

7         (5) under the Investment Advisers Act of 1940

8    (15 U.S.C. 80b–1 et seq.) by the Securities and Ex-

9    change Commission with respect to investment ad-

10   visers registered under that Act;

11        (6) under State insurance law in the case of

12   any person engaged in providing insurance, by the

13   applicable State insurance authority of the State in

14   which the person is domiciled, subject to section 104

15   of the Gramm-Bliley-Leach Act (15 U.S.C. 6701);

16        (7) under part A of subtitle VII of title 49,

17   United States Code, by the Secretary of Transpor-

18   tation with respect to any air carrier or foreign air

19   carrier subject to that part;

20        (8) under the Packers and Stockyards Act,

21   1921 (7 U.S.C. 181 et seq.) (except as provided in

22   section 406 of that Act (7 U.S.C. 226, 227)), by the

23   Secretary of Agriculture with respect to any activi-

24   ties subject to that Act;

O:\CUL\CUL03.344                                        S.L.C.

31

1        (9) under the Farm Credit Act of 1971 (12

2    U.S.C. 2001 et seq.) by the Farm Credit Adminis-

3    tration with respect to any Federal land bank, Fed-

4    eral land bank association, Federal intermediate

5    credit bank, or production credit association; and

6        (10) under the Communications Act of 1934

7    (47 U.S.C. 151 et seq.) by the Federal Communica-

8    tions Commission with respect to any person subject

9    to the provisions of that Act.

10    (b) EXERCISE OF CERTAIN POWERS.—For the pur-

11  pose of the exercise by any agency referred to in sub-

12  section (a) of its powers under any Act referred to in that

13  subsection, a violation of this Act is deemed to be a viola-

14  tion of a requirement imposed under that Act. In addition

15  to its powers under any provision of law specifically re-

16  ferred to in subsection (a), each of the agencies referred

17  to in that subsection may exercise, for the purpose of en-

18  forcing compliance with any requirement imposed under

19  this Act, any other authority conferred on it by law.

20  **SEC. 303. ENFORCEMENT BY STATES.**

21    (a) CIVIL ACTION.—In any case in which the attor-

22  ney general of a State has reason to believe that an inter-

23  est of the residents of that State has been or is threatened

24  or adversely affected by any person engaging in a practice

25  that violates this Act, the State, as parens patriae, may

Case 1:01-cv-00630-SAS     Document 38-3     Filed 09/04/2003     Page 32 of 37
O:\CUL\CUL03.344                                                      S.L.C.

32

1   bring a civil action on behalf of the residents of the State

2   in a district court of the United States of appropriate ju-

3   risdiction or in any other court of competent jurisdiction—

4         (1) to enjoin that practice; or

5         (2) to obtain damages on behalf of residents of

6      the State, in an amount equal to the greater of—

7            (A) the actual monetary loss suffered by

8         such residents; or

9            (B) the amount determined under sub-

10        section (b).

11    (b) STATUTORY DAMAGES.—For purposes of sub-

12   section (a)(2)(B), the amount determined under this sub-

13   section is the amount calculated by multiplying the num-

14   ber of willful, knowing, or negligent violations of this Act

15   by an amount, in the discretion of the court, of up to $10

16   (with each separately addressed unlawful message received

17   by such residents treated as a separate violation). In de-

18   termining the per-violation penalty under this subsection,

19   the court shall take into account the degree of culpability,

20   any history of prior such conduct, ability to pay, the extent

21   of economic gain resulting from the violation, and such

22   other matters as justice may require.

23    (c) ATTORNEY FEES.—In the case of any successful

24   action under subsection (a), the State shall be awarded

1   the costs of the action and reasonable attorney fees as de-

2   termined by the court.

3       (d) NOTICE.—

4           (1) PRE-FILING.—Before filing an action under

5       paragraph (1), an attorney general shall provide to

6       the Commission—

7               (A) written notice of that action; and

8               (B) a copy of the complaint for that ac-

9           tion.

10          (2) CONTEMPORANEOUS.—If an attorney gen-

11      eral of a State determines that it is not feasible to

12      provide the notice required by paragraph (1) before

13      filing the action, the notice and a copy of the com-

14      plaint shall be provided to the Commission when the

15      action is filed.

16      (e) INTERVENTION.—If the Commission receives no-

17  tice under subsection (d), the Commission—

18          (1) may intervene in the action that is the sub-

19      ject of the notice; and

20          (2) has the right—

21              (A) to be heard with respect to any matter

22          that arises in that action; and

23              (B) to file a petition for appeal.

24      (f) CONSTRUCTION.—For purposes of bringing any

25  civil action under subsection (a), nothing in this Act shall

Case 1:01-cv-00630-SAS    Document 38-3    Filed 09/04/2003    Page 34 of 37
O:\CUL\CUL03.344                                                    S.L.C.

34

1    be construed to prevent an attorney general of a State

2    from exercising the powers conferred on the attorney gen-

3    eral by the laws of that State to—

4            (1) conduct investigations;

5            (2) administer oaths or affirmations; or

6            (3) compel the attendance of witnesses or the

7        production of documentary and other evidence.

8        (g) LIMITATION ON STATE ACTION WHILE FEDERAL

9    ACTION IS PENDING.—If the Commission or other appro-

10   priate Federal agency under section 208(a) has instituted

11   a civil action or an administrative action for violation of

12   this Act, no State attorney general may bring a separate

13   action under this subsection during the pendency of that

14   action against any defendant named in the complaint of

15   the Commission or the other agency for any violation of

16   this Act alleged in the complaint. Nothing in this sub-

17   section shall preclude a State from joining an action

18   brought by the Commission or other agency or cooperating

19   with the Commission's or agency's prosecution of that ac-

20   tion.

21   **SEC. 304. ACTION BY PROVIDER OF INTERNET ACCESS**

22               **SERVICE.**

23       (a) ACTION AUTHORIZED.—A provider of Internet

24   access service adversely affected by a violation of this Act

25   may bring a civil action in any district court of the United

1  States with jurisdiction over the defendant, or in any other

2  court of competent jurisdiction, to—

3          (1) enjoin further violation by the defendant; or

4          (2) recover damages in an amount equal to the

5      greater of—

6              (A) actual monetary loss incurred by the

7          provider of Internet access service as a result of

8          such violation; or

9              (B) the amount determined under sub-

10         section (b).

11  (b) STATUTORY DAMAGES.—For purposes of sub-

12  section (a)(2)(B), the amount determined under this para-

13  graph is the amount calculated by multiplying the number

14  of willful, knowing, or negligent violations by an amount,

15  in the discretion of the court, of up to \$10 (with each

16  separately addressed unlawful message received by such

17  residents treated as a separate violation). In determining

18  the per-violation penalty under this subsection, the court

19  shall take into account the degree of culpability, any his-

20  tory of prior such conduct, ability to pay, the extent of

21  economic gain resulting from the violation, and such other

22  matters as justice may require.

23  (c) ATTORNEY FEES.—In any action brought pursu-

24  ant to subsection (a), the court may, in its discretion, re-

25  quire an undertaking for the payment of the costs of such

36

1 action, and assess reasonable costs, including reasonable

2 attorneys' fees, against any party.

### SEC. 305. ACTION BY INDIVIDUAL CONSUMERS.

4     (a) ACTION AUTHORIZED.—A recipient adversely af-

5 fected by a violation of this Act may, if otherwise per-

6 mitted by the laws or rules of State court, bring, in an

7 appropriate court of that State, an action to—

8          (1) enjoin further violation by the defendant;

9          (2) recover damages in an amount equal to the

10     greater of—

11              (A) actual monetary losses incurred by the

12          plaintiff as a result of such violation; or

13              (B) the amount determined under sub-

14          section (b); or

15          (3) both enjoin further violation and recover

16     damages under paragraphs (1) and (2).

17     (b) STATUTORY DAMAGES.—For purposes of sub-

18 section (a)(2)(B), the amount determined under this sub-

19 section is the amount calculated by multiplying the num-

20 ber of willful, knowing, or negligent violations adversely

21 affecting that recipient by an amount, determined in the

22 discretion of the court, of not more than $1,000. Each

23 separately addressed unlawful electronic mail message re-

24 ceived by the plaintiff shall be treated as a single violation

25 regardless of the number of violations contained in that

37

1 message. In determining the per-violation penalty under

2 this subsection, the court shall take into account the de-

3 gree of culpability, any prior history of such conduct, abil-

4 ity to pay, the extent of economic gain resulting from the

5 violation, and such other matters as justice may require.

6     (c) LIMITATION ON ACTIONS.—

7         (1) IN GENERAL.—No action may be brought

8     under or based on this section against an electronic

9     mail service provider or Internet Service Provider in-

10     volved in only the routine transmission of the com-

11     mercial electronic mail or UCE sent in violation of

12     this Act.

13         (2) INDIVIDUAL RIGHT OF ACTION.—The right

14     of action granted in this section is an individual

15     right. No action brought under this section or based

16     on this section may be maintained as a class action

17     under Rule 23 of the Federal Rules of Civil Proce-

18     dure or any State law, rule, or procedure for class

19     actions or other representative actions.

20     (d) ATTORNEY FEES AND COSTS.—In any action

21 brought pursuant to subsection (a) the court may, in its

22 discretion, require the payment of the costs of such action,

23 and assess reasonable costs, including reasonable attor-

24 neys' fees, against any party.